

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-16-00050-CV

_____

RICHARD SEIM AND LINDA SEIM, Appellants

V.

ALLSTATE TEXAS LLOYDS AND LISA SCOTT, Appellees

_____

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-270531-14

_____

Before the En Banc Court
Memorandum Opinion on Remand and on En Banc Reconsideration
by Justice Gabriel (joined by Justices Kerr, Birdwell, Bassel, and Womack)
Dissenting Memorandum Opinion on Remand and on En Banc Reconsideration by
Chief Justice Sudderth (joined by Justice Pittman.)

**MEMORANDUM OPINION ON REMAND
AND ON EN BANC RECONSIDERATION**

Appellants Richard and Linda Seim appeal from the trial court's summary judgment dismissing their contractual and extracontractual claims against their home insurer and its adjuster, appellees Allstate Texas Lloyds and Lisa Scott, after the Seims' claim for water damage to their home was denied. On original en banc submission, we affirmed the trial court's summary judgment and held that because the Seims' expert's two causation reports and supporting affidavit were effectively unsworn, none raised a fact issue on any of the Seims' claims. *Seim v. Allstate Tex. Lloyds*, No. 02-16-00050-CV, 2017 WL 1738028, at *5–6 (Tex. App.—Fort Worth May 4, 2017) (en banc) (mem. op. on reconsideration) ("We are thus left with no sworn evidence that the Seims' loss occurred during the policy period.") (hereinafter, *Seim I*), *rev'd*, 551 S.W.3d 161, 166 (Tex. 2018) (per curiam). The Texas Supreme Court, in reversing *Seim I* and remanding the appeal to this court, held that because Allstate and Scott did not secure a ruling on their objections to the evidence regarding the form defects, Allstate and Scott waived the objections. 551 S.W.3d at 163–64, 166 (hereinafter, *Seim II*).[1] On remand, a panel of this court held that the Seims' expert's

---

[1]*Seim II* additionally overruled two opinions from this court, which held that an order granting a summary-judgment motion implicitly sustains the prevailing party's evidentiary objections. 551 S.W.3d at 164–66 (overruling *Frazier v .Yu*, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet denied), and *Blum v. Julian*, 977 S.W.2d 819, 823–24 (Tex. App.—Fort Worth 1998, no pet.)).

reports were conclusory and incompetent to raise a fact issue—a substantive defect that requires no trial objection or ruling—scuttling the Seims' claims against Allstate and Scott. *Seim v. Allstate Tex. Lloyds*, No. 02-16-00050-CV, 2018 WL 5832106, at \*6 (Tex. App.—Fort Worth Nov. 8, 2018) (mem. op.) (hereinafter, *Seim III*). We granted the Seims' motion for en banc reconsideration, withdrew the *Seim III* memorandum opinion and judgment, and now hold that Allstate and Scott conclusively established the affirmative defense of limitations, which was a ground asserted in their traditional summary-judgment motion. *See* Tex. R. App. P. 49.7. Thus, we affirm the trial court's summary judgment on this legal basis.

## I. BACKGROUND

### A. CLAIMS FOR INSURANCE COVERAGE

Clearly, the facts and procedural history surrounding this appeal have been recited multiple times. *Seim II*, 551 S.W.3d at 162–63; *Seim III*, 2018 WL 5832106, at \*2–3; *Seim I*, 2017 WL 1738028, at \*1–2. But because those opinions did not specifically address the grounds raised by Allstate and Scott in support of their summary-judgment motion in the context of rule 166a, we will explore the facts leading to the Seims' suit against Allstate and Scott and their pleadings. Tex. R. Civ. P. 166a(b)–(c), (i).

The Seims' home was allegedly damaged after three storms blew through the Seims' neighborhood in a five-year period: on April 13, 2007; April 9, 2008; and May 8, 2012. The Seims filed claims with Allstate, which insured their home at the

3

time of all three storms. Each storm occurred during and was governed by a different and separate contract based on the effective date of each contract. The Seims' claims for coverage—designated claim numbers 0102779105, 0112511373, and 0245019815[2]—were resolved in some manner.[3] The Seims later alleged that they "made the repairs as instructed by Allstate and had no issues of water ingress" after the damage caused by the 2012 storm was repaired.

Allstate again issued the Seims a home-insurance policy in a separate contract, making coverage effective from April 27, 2013, through April 27, 2014. This contract provided that during the coverage period, damage "caused by rain . . ., whether or not driven by wind," would not be covered "unless the direct force of wind or hail makes an opening in the roof or wall and the rain . . . enters through this opening and causes the damage." The contract further provided that any cause of action or suit brought against Allstate "must be started within two years and one day after the cause of action accrues." *See generally Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 533,

---

[2]Throughout the opinion and after initially identifying each claim number in full, we will refer to each claim by its last three numbers.

[3]Claim number 105 was denied for rot damage because "rot damage to the soffit on the small portion of the roof [was] not a covered peril in the policy" and denied for roof replacement because the roof was repairable. It appears the Seims received some payment from Allstate for the roof repairs. Claim number 373 resulted in a partial payment for roof repairs. Claim number 815 resulted in two payments to the Seims to repair the roof and to remediate mold damage to the home's interior.

537–38 (Tex. 2019) (holding contractual waiver of statutory limitations period allowed if specific and for a reasonable time).

On August 13, 2013, a severe storm again hit the Seims' neighborhood. The Seims filed a claim with Allstate—claim number 0297959876—seeking coverage for damages to their roof and in two rooms of their home that they asserted were caused by hail and rain from this most recent storm. Scott inspected the home on September 10, 2013. During her inspection, she noticed some interior leaks, primarily around the skylights in the great room and sunroom, but found no collateral damage to the home's exterior. Scott also inspected the tile roof and found no wind or hail damage. Some of the tiles, however, had "thermal cracking," and it was apparent that prior repairs to the ridge line had been made. Scott did find a tile with a missing piece that was next to a skylight. But because there was no opening in the roof caused by wind or hail—"shingles off or hail so big that . . . it's gone through and water can penetrate"—Scott concluded that any new damage was not covered under the policy. Scott did not inspect the attic, which she would do "sometimes," because she had not seen any damage to the roof caused by wind or hail. The same day as Scott's inspection, Allstate formally denied the claim and informed the Seims in the denial letter that because "[t]here is no opening created by wind or hail that is causing the roof to leak, . . . there is no coverage for the interior water damage."

5

## B. TRIAL-COURT PROCEEDINGS

The Seims filed suit against Allstate on February 11, 2014, regarding its actions and inactions after the 2013 storm and its ultimate denial of the Seims' claim for coverage.[4] They raised claims for unfair settlement practices, common-law fraud, breach of contract, violations of the statutory prompt-payment-of-claims requirements (PPC), and breach of the common-law duty of good faith and fair dealing (GFFD).

Two months later on April 15, 2014, the Seims filed a first amended petition against Allstate, the Seims' local insurance agent Maria Golseth, and Michael Pierce, the inspector who assessed the damage to the Seims' home after the 2007 storm. The factual allegations were specifically limited to the named defendants' actions and inactions regarding claim number 105—the claim the Seims filed after the 2007 storm. Indeed, the Seims exclusively referred to their "claim," not "claims," for coverage in their factual allegations.[5] Against Allstate, Maria, and Pierce, the Seims raised causes of action for unfair settlement practices and fraud. Against Allstate, the Seims additionally alleged breach of contract, PPC violations, and breach of the duty of GFFD.

---

[4]The Seims did not refer to the claim at issue by number, but their factual allegations and claims related solely to the 2013 storm—claim number 876.

[5]In their statements of their causes of action, the Seims attacked the named defendants' actions regarding their "claims."

Three weeks later on May 6, 2014, the Seims filed a second amended petition against Allstate; Maria's husband Chad (who the Seims alleged sold the Allstate policy to them along with Maria); Pierce; and for the first time, Scott. Their factual allegations were limited to the claims they filed after the 2007, 2008, and 2012 storms and specified only claim numbers 105, 373, and 815. Although Scott inspected the property after the 2013 storm, the Seims alleged that Pierce and Scott "failed to conduct reasonable investigations" only after the 2007, 2008, and 2012 storms. They also alleged that Allstate "underpaid" based on "grossly deficient damage and cost of repair estimates," which led to the Seims' inability to satisfactorily repair the damage caused by the 2007, 2008, and 2012 storms. Against all named defendants, the Seims raised claims for unfair settlement practices, violations of the Deceptive Trade Practices Act (DTPA), common-law fraud, conspiracy to commit fraud, PPC violations, and breach of the duty of GFFD. Against Allstate, the Seims additionally alleged a claim for breach of contract. Allstate, Scott, and the Golseths answered the second amended petition and raised the affirmative defense of limitations.[6] *See* Tex. R. Civ. P. 94.

On April 13, 2015, almost a year after the Seims filed their second amended petition, the Seims filed a notice of nonsuit of their claims against Pierce. *See* Tex. R. Civ. P. 163. On October 5, 2015, Allstate, Scott, and the Golseths moved for partial

---

[6]Service of process on Pierce by certified mail was never made, and a return of service was not filed. *See* Tex. R. Civ. P. 103, 106(a)(2), 107(c).

summary judgment regarding the claims in the second amended petition arising from the 2007 and 2008 storms based on limitations. In the motion, they noted that although the Seims' original petition raised claims regarding the 2013 storm, "[a]ll causes of action arising from this August 13, 2013 claim have been dismissed by subsequent amendments." *See* Tex. R. Civ. P. 65 (dictating pleading that is later amended "shall no longer be regarded as a part of the pleading in the record of the cause . . . unless it be necessary to look to the superseded pleading upon a question of limitation"). Allstate, Scott, and the Golseths also filed separate summary-judgment motions directed to the Seims' claims arising from the 2012 storm, again noting that all claims arising from the 2013 storm had been dismissed by operation of the first and second amended petitions. On October 27, 2015, the Seims noticed their nonsuit of their claims against the Golseths.

The next day—October 28, 2015—the Seims filed a third amended petition against Allstate and Scott, almost eighteen months after they had filed the second amended petition. Their factual allegations were specifically limited to the damage to their home arising from the 2013 storm and the handling of claim number 876. The Seims acknowledged that they had "submitted claims to Allstate for damage to the roof" before August 13, 2013, but in an about-face, they averred that they "made the repairs as instructed by Allstate and had no issues of water ingress during the twelve months leading up to the August 13, 2013 storm." The Seims raised claims against Allstate and Scott for unfair settlement practices, violations of the DTPA, fraud, and

8

conspiracy to commit fraud. Against Allstate alone, they additionally raised claims for breach of contract, PPC violations, and breach of the duty of GFFD. Allstate and Scott answered the third amended petition and again pleaded the affirmative defense of limitations.

On November 3, 2015, Allstate and Scott moved for a no-evidence and traditional summary judgment, primarily arguing that the Seims' claims were time-barred because they did not file their third amended petition until more than two years after the 2013 claim was denied in September 2013.

The Seims responded that their claims arising from the 2013 storm were not time-barred because they related back to the date of their original petition—February 11, 2014—which raised claims arising only from the damage caused by the 2013 storm. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (providing amendment to petition that changes facts or grounds of liability or defense in prior petition is not subject to limitations "unless the amendment . . . is wholly based on a new, distinct, or different transaction or occurrence"); *accord* Fed. R. Civ. P. 15(c) (providing for relation back of amended pleading under certain circumstances, including adding a claim that "arose out of the conduct, transaction, or occurrence [originally] set out"). The Seims argued that the relation-back doctrine applied because the omission of the 2013 claims in their first and second amended petitions was inadvertent and because relation back would not prejudice Allstate and Scott. They based their no-prejudice argument on the fact that the case had proceeded as if the damages from all four

9

storms had been at issue and because Allstate and Scott did not notify the Seims that their first and second amended petitions did not raise claims directed to the 2013 storm:

> Plaintiffs did not realize at that time that the August 13, 2013 storm had been left out of the [first and second amended] petition[s]. The parties continued to conduct discovery and proceeded as though the claim related to the August 13, 2013, storm was still a part of this suit. Defendants did not raise any relevance objection to discovery relating to the claim based on the August 13, 2013 storm, and Defendants did not object when witnesses were deposed regarding that claim, or otherwise draw Plaintiff's counsel's attention to the fact that that claim had been omitted from the live pleadings. As far as Plaintiffs['] counsel can tell, the first time Defendants' counsel mentioned the absence of the claim based on the August 13, 2013 storm was in the fine print of a footnote to Defendants Chad Golseth, Maria Golseth[,] and Lisa Scott's summary judgment motion filed on October 5, 2015. The October 5, 2015, summary judgment motion was based on a May 6, 2012, claim that was discussed in the First Amended Petition and the Second Amended Petition. The pre-2013 claims in those versions of the petition [i.e., the first and second amended petitions] had been included to show Plaintiffs' prior dealings with Allstate leading up to the inadvertently omitted 2013 claim.

The Seims also filed a motion to reinstate their claims arising from the 2013 storm because they had been "inadvertently dropped" and requested that the claims in the third amended petition arising from the 2013 storm be considered timely as they related back to the claims in their February 2014 original petition. The Seims pointed out that the parties had conducted discovery relating to the 2013 storm after the claims were not included in the first and second amended petitions "*without any objection from the Defendants.*" Allstate and Scott objected to the motion to reinstate,

10

asserting that the relation-back doctrine was inapplicable to save the Seims' claims stated in their third amended petition.

The trial court held a hearing on Allstate and Scott's summary-judgment motion on December 17, 2015.[7] On January 14, 2016, the trial court granted Allstate and Scott's traditional and no-evidence summary-judgment motion after reviewing "the Motion, all supporting briefs and appendices, all responses, all competent summary judgment evidence, and pleadings." The trial court did not specify on which grounds the summary judgment was based but did include language that all relief not granted was denied.

## C. APPELLATE-COURT PROCEEDINGS

The Seims appealed the summary judgment on all but their fraud claims. As we explained at the outset, we affirmed the trial court's summary judgment, which was reversed by the supreme court. *Seim II*, 551 S.W.3d at 163–64, 166. The supreme court remanded the case to allow this court to address Allstate and Scott's argument that they were "still entitled to summary judgment on other grounds." *Id.* at 166.

## II. JURISDICTION

An amicus curiae submitted a post-opinion, pre-mandate letter brief in the supreme court, arguing that the appellate courts had no jurisdiction over the Seims' appeal because the trial court's summary-judgment order did not facially dispose of all

---

[7]There is no reporter's record from the hearing.

parties and claims to the suit. The supreme court did not address this argument before issuing its mandate. On remand, another amicus curiae proffered a "supplemental . . . submission" to this court, arguing that the earlier amicus curiae brief received by the supreme court was correct: The absence of a signed, final judgment dooms this court's exercise of jurisdiction over the Seims' appeal.

Even though the trial court did not include express finality language that the order disposed of all parties and claims and was, therefore, final and appealable, the order in actuality disposed of all parties and claims that were before the trial court. *See In re Elizondo*, 544 S.W.3d 824, 827–28 (Tex. 2018) (per curiam) (orig. proceeding) (holding if summary-judgment order lacks finality language, appellate court may look to the record to determine whether order actually disposed of all claims and parties); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205–06 (Tex. 2001) ("[W]e conclude that when there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal **unless** it actually disposes of every pending claim and party **or** unless it clearly and unequivocally states that it finally disposes of all claims and all parties. . . . Nothing in the order [here] indicates that it is a final judgment, **and** it did not dispose of all pending claims and parties." (emphases added)). The Seims, Allstate, and Scott were the only parties before the trial court at the time of the summary-judgment order. Allstate and Scott moved for summary judgment on each of the Seims' claims against them in their combined motion, which was granted by the trial court; there were no counterclaims, cross-claims, or third-party claims at issue.

12

*See McFadin v. Broadway Coffeehouse, LLC*, 539 S.W.3d 278, 283–84 & n.3 (Tex. 2018) ("If [the order] disposes of every remaining issue in a case, it does not lack finality for purposes of appeal merely because it recites that it is partial, refers to only some of the parties or claims, or lacks Mother Hubbard language."); *Lehmann*, 39 S.W.3d at 192–93 (holding summary-judgment order final "if and only if either it actually disposes of all claims and parties then before the court, **regardless of its language**, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties" (emphasis added)). We conclude that the summary-judgment order was final for purposes of appeal even though it did not contain express finality language. *See McFadin*, 539 S.W.3d at 283–84.

## III. PROPRIETY OF SUMMARY JUDGMENT: LIMITATIONS

As we recognized, the trial court did not state upon what grounds its summary-judgment order was based. Accordingly, we must affirm the summary judgment if any of the grounds raised by Allstate and Scott were meritorious. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

### A. LIMITATIONS ARGUMENTS

In their traditional summary-judgment motion directed to the third amended petition, Allstate and Scott argued that because the Seims had abandoned their claims tied to the 2013 storm by eliminating them from the first and second amended petitions, the Seims' reassertion of those claims in the third amended petition rendered them time-barred. *See* Tex. R. Civ. P. 65 (providing amended pleading

supersedes prior pleading, and prior pleading is no longer part of the record, unless superseded pleading is relevant to answer limitations question). *See generally* Tex. R. Civ. P. 166a(i) & 1997 cmt. (authorizing party without burden of proof to move for no-evidence summary judgment); *Zamora v. Tarrant Cty. Hosp. Dist.*, 510 S.W.3d 584, 589 (Tex. App.—El Paso 2016, pet. denied) ("[L]imitations is an affirmative defense that may only be raised on traditional and not no-evidence summary[-]judgment review."). They contended that the Seims' claims for breach of contract and for violations of the insurance code's PPC requirements against Allstate were governed by the two-year-and-one-day period dictated by the insurance contract, which accrued when Allstate denied claim number 876 on September 10, 2013. Allstate and Scott also asserted that any extracontractual claims for violations of the statutory settlement-practices requirements, the DTPA, the PPC requirements, and the common-law duty of GFFD were governed by a two-year statutory limitations period, which accrued when Allstate denied claim number 876. *See* Tex. Bus. & Com. Code Ann. § 17.565; Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); Tex. Ins. Code Ann. § 541.162.

In their summary-judgment response, motion to reinstate, and first appellate issue, the Seims did not assert that a different limitations period applied or that the accrual date was not September 10, 2013. Instead, the Seims argued that any claims based on damage from the August 13, 2013 storm in the third amended petition related back to the date of the February 2014 original petition, which was filed well

14

within the limitations periods asserted by Allstate and Scott. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.068; *cf. Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 831 (Tex. 1994) (applying relation-back concept of section 16.068 to inadvertently omitted parties). They further asserted that Allstate and Scott did not show that they would be prejudiced if the claims related back to the date of the original petition. The Seims attached to their summary-judgment response the affidavit of their attorney in which he swore that the omission of any claims tied to the 2013 storm from the Seims' first and second amended petitions had been inadvertent and that he "reasserted" the claims arising from the 2013 storm shortly after he noticed the error.

Allstate and Scott countered in both the trial court and this court that section 16.068 could not save the claims in the Seims' third amended petition from the time-bar because (1) any allegations arising from the 2013 storm and claim number 876 were voluntarily dismissed by operation of rule 65 when the Seims filed their first and second amended petitions, which both occurred more than a year before the third amended petition was filed, and (2) the Seims' causes of action in their third amended petition did not arise from the same transaction or occurrence alleged in their first and second amended petitions. Allstate and Scott concluded, therefore, that the causes of action arising from the 2013 storm and claim number 876 did not relate back to the February 2014 original petition for limitation purposes. *See Clary Corp. v. Smith*, 949 S.W.2d 452, 459 (Tex. App.—Fort Worth 1997, pet. denied).

## B. STANDARD OF REVIEW

We review the trial court's summary judgment de novo, considering all grounds presented to the trial court and preserved on appeal. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). We are to take as true all competent evidence favorable to the Seims, and we indulge every reasonable inference and resolve any doubts in their favor. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). Allstate and Scott were entitled to summary judgment on the affirmative defense of limitations if they conclusively proved all elements of that defense. *See* Tex. R. Civ. P. 166a(b)–(c); *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008) (per curiam); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 445 (Tex. 1982). If Allstate and Scott conclusively established a limitations bar, the Seims were then required to proffer summary-judgment proof raising a fact issue in avoidance of the statue of limitations. *See Diversicare*, 185 S.W.3d at 846; *Palmer v. Enserch Corp.*, 728 S.W.2d 431, 435 (Tex. App.—Austin 1987, writ ref'd n.r.e.).

## C. APPLICATION

The Seims did not dispute that the applicable limitations periods were those asserted by Allstate and Scott, that the accrual date was September 10, 2013, or that their third amended petition was filed more than two years after the accrual date.

16

Thus, Allstate and Scott conclusively proved their affirmative defense. *See generally Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998) ("[T]he commencement of the limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record.").

The burden then shifted to the Seims to raise a material fact issue regarding an avoidance theory based on the filing date of the original petition. *See KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Brewster v. Columbia Med. Ctr. of McKinney Subsidiary, L.P.*, 269 S.W.3d 314, 317 (Tex. App.—Dallas 2008, no pet.). The Seims relied on the relation-back doctrine in section 16.068 to assert that the claims in the third amended petition related back to the date of the original petition for limitations purposes. They did not dispute that their first and second amended petitions did not raise any allegation or claim regarding the 2013 storm and claim number 876; but they asserted that the omission was inadvertent, allowing relation back to save their claims in the third amended petition from the operation of the applicable limitations periods.

The Seims' causes of action in their third amended petition against Allstate and Scott were similar to those previously raised in their superseded original petition against Allstate and related solely and exclusively to the 2013 storm and claim number 876. And as we noted previously, the Seims specifically alleged in their third amended petition that any damage from the prior three storms—the subject of their first and second amended petitions—had been fully addressed such that there had been no

17

damage to the home for twelve months before the 2013 storm. The 2007 storm was the sole focus of the first amended petition, and the second amended petition raised allegations only regarding the 2007, 2008, and 2012 storms. The allegations and claims arising from the 2013 storm and claim number 876 in the original petition were clearly omitted from the first and second amended petitions. The Seims do not dispute any of these facts.

What is in dispute is the import of these facts and the Seims' assertions of inadvertence to the application of the relation-back doctrine:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

Tex. Civ. Prac. & Rem. Code Ann. § 16.068. A different transaction or occurrence under section 16.068 is a set of facts that gives rise to the cause of action sued upon. *See Brewster*, 269 S.W.3d at 316–18. Here, each storm occurred on a different date, each resulting insurance claim was governed by a separate and distinct insurance contract, and each claim was resolved differently. Because the first three storms and resulting claim numbers were separate occurrences or transactions from the 2013 storm, the first and second amended petitions operated to dismiss or abandon any claim tethered to the 2013 storm and claim number 876 raised in the original petition. *See, e.g.*, *id.* (concluding medical conduct leading to skin ulcers was separate transaction

18

from conduct leading to claims based on cardiac care; thus, cardiac claims did not relate back to date of petition raising skin-ulcer claims); *cf. Murthy v. Abbott Labs.*, 847 F. Supp. 2d 958, 980–81 (S.D. Tex. 2012) (finding relation back to date of initial pleadings under federal rule 15 because added breach-of-contract claim was "rooted in [Murthy's] participation in the Abbott study and her subsequent development of cancer" and "shares the same actors and the same underlying operative facts"); *In re Hochheim Prairie Farm Mut. Ins. Ass'n*, 296 S.W.3d 907, 912 (Tex. App.—Corpus Christi–Edinburg 2009, orig. proceeding) (recognizing claims regarding three separate insurance policies were severable). The relation-back doctrine does not revive a dismissed claim that is later refiled. *See Rodriguez v. Crutchfield*, 301 S.W.3d 772, 775 (Tex. App.—Dallas 2009, no pet.) (citing *Clary Corp.*, 949 S.W.2d at 459); *Delhomme v. Comm'n for Lawyer Discipline*, 113 S.W.3d 616, 621 (Tex. App.—Dallas 2003, no pet.) (citing *Clary Corp.*, 949 S.W.2d at 460).

By failing to include any factual allegations or causes of action attached to the 2013 storm and claim number 876 in their first and second amended petitions, the Seims dismissed or abandoned any claim directed to the separate occurrence of the 2013 storm, the separate transaction of claim 876, and the separate transaction of the insurance contract in effect on the date of the 2013 storm. *See* Tex. R. Civ. P. 65; *Amerigroup Tex., Inc. v. True View Surgery Ctr., L.P.*, 490 S.W.3d 562, 570 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *J.M. Huber Corp. v. Santa Fe Energy Res., Inc.*, 871 S.W.2d 842, 844 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

Accordingly, the Seims' claims wholly tethered to the 2013 storm and claim number 876 asserted in the third amended petition do not relate back to the date of the original petition for limitations purposes because the Seims' claim specifically implicating the 2013 storm and claim number 876 arose from a different transaction or occurrence than the prior three storms and claim numbers 105, 373, and 815, which were the sole focus of the first and second amended petitions. *Cf. Stewart Info. Servs. Corp. v. Great Am. Ins. Co.*, 997 F. Supp. 2d 650, 667–68 (S.D. Tex. 2014) (holding under federal rule 15, breach-of-contract claim related back to filing date of misrepresentation claim "relating to the **same** contract" (emphasis added)).

The allegations in the third amended petition were more than mere expansions of the grounds of liability based on the same occurrence or transaction challenged in the first and second amended petitions. *See Chavez v. Anderson*, 525 S.W.3d 382, 387 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Nolan v. Hughes*, 349 S.W.3d 209, 214 (Tex. App.—Dallas 2011, no pet.); *see also First State Bank & Trust Co. of Rio Grande City v. Ramirez*, 126 S.W.2d 16, 18 (Tex. [Comm'n Op.] 1939). In their third amended petition, the Seims wholly alleged a separate and distinct transaction—the denial of claim 876—than they did in their first and second amended petitions— actions and inactions surrounding claim numbers 105, 373, and 815. Even though the Seims alleged causes of action arising only from the 2013 storm and claim number 876 in their original petition, that earlier filing date does not carry forward to the third amended petition under the relation-back doctrine because the allegations in the

original petition were dismissed and abandoned by the first and second amended petitions. *See Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 588 (Tex. App.—Austin 2007, pet. denied) (op. on reh'g).

We recognize that the supreme court has applied the relation-back doctrine to save claims against parties who were inadvertently omitted in an amended pleading, but those parties were added to claims that arose from the same transaction or occurrence challenged in the superseded pleading. *Am. Petrofina*, 887 S.W.2d at 831; *see also Samara Portfolio Mgmt., LLC v. Zargari*, No. 13-17-00049-CV, 2018 WL 2979847, at *7 (Tex. App.—Corpus Christi–Edinburg June 14, 2018, pet. denied) (mem. op.) (concluding DTPA claim related back to date of earlier filed claims because although DTPA claim "changed the grounds of liability, [it] was not wholly based on a new, distinct, or different transaction or occurrence"); *Woodruff v. Wright*, 51 S.W.3d 727, 731, 733 (Tex. App.—Texarkana 2001, pet. denied) (discussing *American Petrofina* and noting that "since all of [the plaintiffs'] claims were identical, the factual claims made in the petition were not affected by the omission of the particular plaintiff" and that because "the claims were all identical . . . even if the omission of a plaintiff was an accident, the defendants were not harmed by read[]ing that plaintiff [in]to the case"); *Hendricks v. Thornton*, 973 S.W.2d 348, 366–67 (Tex. App.—Beaumont 1998, pet. denied) (applying relation-back doctrine to omitted claim that was based on same transaction or occurrence as prior, superseded claims because defendants were not prejudiced by the repleaded claim). Allstate was put on notice that it was defending

its actions regarding the 2013 storm and claim 876 by the Seims' original petition. But in the next three months, the Seims twice amended their petition to remove any reference to the 2013 storm and claim number 876 and to focus solely on the three prior storms and claim numbers 105, 373, and 815. The Seims did not amend their petition for a third time to again attack only the conduct surrounding the 2013 storm and claim number 876 until almost eighteen months later, after Allstate, the Golseths, and Scott mentioned the dismissal by abandonment in their summary-judgment filings. The Seims failed to give fair notice to Allstate and Scott that their conduct surrounding a separate transaction or occurrence was still at issue after that conduct was dismissed from the Seims' two subsequent amended petitions. *See Brewster*, 269 S.W.3d at 319–20.

The Seims assert that the claims in their first and second amended petitions were alleged merely to show their "prior dealings with Allstate leading up to the inadvertently omitted 2013 claim." But nothing about the 2013 storm or Allstate's subsequent denial of claim number 876 was included in the first or second amended petition; the Seims' allegations in their first and second amended petitions were specifically tied only to claim numbers 105, 373, and 815 with no reference to claim number 876; and there is no indication in the first or second amended petition that the facts surrounding claim numbers 105, 373, and 815 were merely contextual to support an undisputedly omitted allegation regarding claim number 876. To the contrary, the Seims alleged in their third amended petition that all needed repairs were

22

made after the 2007, 2008, and 2012 storms such that no water damage occurred in the year before the 2013 storm.

The Seims contend in their reply brief that the identical language of their claims tethered to the 2013 storm and claim number 876 in the original and third amended petitions mandates application of the relation-back doctrine. But the cases they cite either do not support their position or are distinguishable. *CHRISTUS Health* and *Walker* directly support the precept that later-added claims based on separate transactions or occurrences do **not** relate back to the date of an earlier filed petition even if they are similarly worded. *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 537–39 (Tex. 2016) (concluding healthcare-liability claim based on actions taken after patient's death did not relate back to date prior healthcare-liability claim was filed because prior claim was based on actions taken before patient's death, claims were separate in time, claims were based on "facts different and distinct," and claims involved different occurrences); *Walker v. Presidium, Inc.*, 296 S.W.3d 687, 694–95 (Tex. App.—El Paso 2009, no pet.) (holding contractual and extra-contractual claims based on denial of uninsured-motorist benefits did not relate back to filing date of claims based on rental-agreement transaction because "the rental transaction and accident are separate from Hertz's failure to pay insured motorist benefits"). This is the principle we apply today.

*Hunicke*, a case decided under the labor code, did apply the relation-back doctrine to save one voluntarily dismissed claim that was later re-alleged. *Hunicke v.*

23

*Seafarers Int'l Union*, No. 14-12-00199-CV, 2013 WL 2444634, at \*6 (Tex. App.—Houston [14th Dist.] June 4, 2013, pet. denied) (mem. op.). Hunicke voluntarily dismissed one of her three employment-discrimination claims then realleged that claim in her first amended petition after discovering her employer's alleged spoliation. *Id.* at \*1–2. Our sister court held that because the first amended petition was based on the same transaction and occurrence as the remaining claims in the original petition and, thus, her voluntary dismissal did not put Hunicke in the position of one who had not filed suit on the same transaction or occurrence, the relation-back doctrine applied to the claim re-alleged in the first amended petition. *Id.* at \*6. This holding was based on the conclusion that at the time of the first amended petition, the original petition remained "valid." *Id.* Those are not our facts, making *Hunicke* inapt.

The Seims also argue that the omission of any claim tied to claim number 876 was inadvertent, as shown by their attorney's affidavit, and that there is no evidence that Allstate would be prejudiced by the application of the relation-back doctrine. This argument appears to be an attempt to invoke the supreme court's holding in *American Petrofina* that the omission of one plaintiff out of more than 1,100 named plaintiffs in the seventh amended petition did not show "an intent to non-suit" that sole plaintiff because there was no evidence that the defendants were not given fair notice and because "the omission of Fazio seems to have been inadvertent." 887 S.W.2d at 830–31; *see also Allen v. Am. Petrofina, Inc.*, 837 S.W.2d 415, 420 (Tex. App.—Beaumont 1992) ("These four named plaintiffs were omitted, deleted or

dropped through inadvertence apparently. Since the plaintiffs number more than 1100, such inadvertence or mistake is understandable and excusable."), *aff'd in part & rev'd in part*, 887 S.W.2d at 831. *See generally Cudd Pressure Control, Inc. v. Sonat Expl. Co.*, 74 S.W.3d 185, 188 (Tex. App.—Texarkana 2002, pet. denied) (discussing when omission is inadvertent and does not operate to dismiss omitted parties based on the specific facts of the case, but noting "such practices . . . cause . . . confusion . . . [and] expense"). But as the supreme court has also recognized, the relation-back test asks "whether the cause of action alleged in the amended petition is 'wholly based upon and grows out of a new, distinct or different transaction and occurrence.'" *Leonard v. Texaco, Inc.*, 422 S.W.2d 160, 163 (Tex. 1967).

In *American Petrofina*, the plaintiffs' claims against the defendants were wholly based on the same transactions or occurrences—"wrongful death and survival claims by numerous plaintiffs against numerous defendants." 887 S.W.2d at 829. In this instance, the claims in the first and second amended petitions, while similar to the types of claims raised in the original and third amended petitions, are grounded in completely separate occurrences or transactions. Allstate and Scott were not put on notice that the 2013 storm and claim number 876 were at issue until eighteen months after the Seims' claims implicating that occurrence had been dismissed by their undisputed abandonment.

We decline to ignore the effect of the plain language of section 16.068 merely because counsel swears he did not intend to dismiss any claim tied to the 2013 storm

25

and claim number 876 when the first and second amended petitions plainly, clearly, and specifically pleaded for relief predicated only on three earlier and separate storms and the resulting three insurance claims for coverage under three different contracts. This lack of fair notice to Allstate and Scott was clearly prejudicial. *Cf. Kissman v. Bendix Home Sys., Inc.*, 587 S.W.2d 675, 677 (Tex. 1979) ("Kissman's trial pleadings do not give fair notice of a claim for reasonable and necessary cost of repairs. The variance between the pleadings and proof is substantial, misleading, and prejudicial. . . .").

The fact that Allstate and Scott did not notify the Seims during discovery or at any point before their motions for summary judgment that the claims regarding the 2013 storm and claim number 876 had been dismissed or abandoned by operation of the first and second amended petitions does not show that Allstate and Scott would not be prejudiced by the application of the relation-back doctrine. Allstate and Scott had no responsibility to inform the Seims how to plead their case, to notify them of the dismissal by abandonment, or to alert them that their discovery requests sought information not directly relevant to the three prior claims for insurance coverage. *Cf.* Tex. R. Civ. P. 192.3(a) ("It is not a ground for objection [to discovery] that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.");[8] *In re Meador*,

_____

[8]We note the Seims' deposition questions to Scott that have been provided to us involved her actions during her inspection of the Seims' home after the 2013

26

968 S.W.2d 346, 352 (Tex. 1998) (orig. proceeding) ("If a lawyer received privileged materials because the opponent inadvertently produced them in discovery, the lawyer ordinarily has no duty to [sua sponte] notify the opponent or voluntarily return the materials.").

## D. SUMMARY

The Seims' claims in their third amended petition were based on a separate transaction or occurrence than the claims in their first and second amended petition. Although their original petition solely raised claims rooted in the same transaction or occurrence at issue in the third amended petition, the failure to include those claims in the first and second amended petitions operated to abandon and thus dismiss any claims attached to that distinct transaction or occurrence. The relation-back doctrine cannot revive these dismissed claims for limitations purposes. Accordingly, the claims in the Seims' third amended petition based on a separate and distinct transaction or

---

storm, but some were in the context of her usual inspection practices, which could arguably be relevant to any attack on how the Seims' prior coverage claims were adjusted as raised in the first and second amended petitions. This undercuts the Seims' argument that Allstate and Scott failed to raise a relevance objection to their discovery requests. *See* Tex. R. Civ. P. 192.3(a). In any event, Allstate and Scott had no duty to raise a discovery objection or "draw [the Seims'] attention" to the abandonment before they moved for summary judgment. *Cf. K.B. Video & Elecs., Inc. v. Naylor*, 847 S.W.2d 401, 408 (Tex. App.—Amarillo 1993, writ denied) ("The mistaken conclusion of appellant's president and its counsel that no further steps . . . were necessary was a mistake not attributable to appellee or any official functionary."); *Thomason v. Freberg*, 588 S.W.2d 821, 825 (Tex. App.—Corpus Christi 1979, no writ) ("[I]t is clear that . . . counsel has no official duty to apprise opposing counsel of the entry of a judgment.").

occurrence than the transactions and occurrences sued upon in their prior two pleadings are time-barred because they were filed more than two years after the undisputed accrual date. *See, e.g.*, *CHRISTUS Health*, 505 S.W.3d at 537–39. The Seims therefore failed to raise a fact issue on their avoidance theory to Allstate and Scott's conclusively established affirmative defense of limitations.

## IV. CONCLUSION

The trial court's summary judgment may be upheld on the legal basis of limitations raised by Allstate and Scott in the trial court and again on appeal, and we overrule the Seims' first appellate issue refuting Allstate and Scott's limitations defense. We need not address the other legal bases raised by Allstate and Scott in seeking summary judgment or the Seims' second appellate issue seeking reversal on the basis of alleged fact issues regarding their affirmative claims for relief. *See Urena*, 162 S.W.3d at 550; *see also* Tex. R. App. P. 47.1. We affirm the trial court's summary judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: July 30, 2019